UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| WAYNE GAGNON, | ) |  |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | No. 1:13-cv-00129-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

# REPORT AND RECOMMENDED DECISION

After a hearing on Plaintiff's application for supplemental security income (SSI) under Title XVI of the Social Security Act[1], Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff Wayne Gagnon has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for SSI benefits.

Following a review of the record, and after consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

## THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review the decision, the Acting Commissioner's final decision is the April 11, 2012, decision of the Administrative Law Judge.

---

[1] Plaintiff voluntarily withdrew his claim for disability insurance benefits under Title II and amended his alleged onset of disability date to be subsequent to his date last insured. Consequently, the ALJ dismissed Plaintiff's Title II claim. (ALJ Decision at 1, PageID #51.) Additionally, because the Plaintiff amended his alleged onset date, the ALJ declined to reopen earlier denied claims that Plaintiff filed in 2003. (*Id.* at 2.) Plaintiff filed the instant claims in August 2009. (*Id.* at 1.)

The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. § 416.920.

At step 1 of the sequential evaluation process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity from August 17, 2009, the date of alleged onset of disability. (ALJ Decision, Findings and Conclusions, ¶ 1.) In the second stage of the analysis, the ALJ found that Plaintiff has the following severe physical impairments: morbid obesity, mild restrictive airway disease, degenerative disk disease, and mild congestive heart failure/edema. (*Id.* ¶ 2.) The ALJ concluded that certain other impairments, syncopal episodes and affective and anxiety disorders, did not qualify as severe impairments. As to mental disorders, the ALJ found only mild limitation in the three "paragraph B" areas of the psychiatric review technique, with no episodes of decompensation. (*Id.* ¶ 2, citing 20 C.F.R. § 416.920a.) At the third step of the process, the ALJ found that this combination of impairments would not meet or equal any listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.* ¶ 3.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ determined that Plaintiff has the residual functional capacity to perform light work, excluding work that requires negotiation of ladders, ropes, and scaffolds, and work that would require more than occasional ramps, stairs, balancing, stooping, crouching, kneeling, and crawling. (*Id.* ¶ 4.) The ALJ found that this degree of limitation prevents Plaintiff from performing any of his past relevant work, including very heavy work as a construction worker II and medium work as an auto body repairer. (*Id.* ¶ 5.)

Plaintiff was born in 1963, making him a younger individual as of the date of the ALJ's decision, has a high school equivalent education, and can communicate in English. (*Id.* ¶¶ 6-7.) The transferability of job skills is not material to the determination of disability under the Medical-

Vocational Guidelines applicable to Plaintiff's light-work restriction and vocational background. (*Id.* ¶ 8.) Based on the testimony of a vocational expert, which testimony the ALJ considered to be "bolstered" by Social Security Rulings 83-14 and 85-15, the ALJ concluded that Plaintiff's non-exertional limitations do not prevent Plaintiff from performing substantially all of the occupations in the light, unskilled category. Consequently, the ALJ found Plaintiff not disabled under the "framework" of Guideline 202.21. (*Id.* ¶¶ 9, 10.)

## PLAINTIFF'S STATEMENT OF ERRORS

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Discussion

Plaintiff argues that the ALJ erred in his residual functional capacity assessment when he failed to account properly for the limiting impact of Plaintiff's "extreme" obesity. In support of this argument, Plaintiff cites and relies upon the obesity-specific requirements of Social Security Ruling 02-1p and the standards for reconciling conflicting expert opinion found in 20 C.F.R. § 416.927. (Statement of Errors at 1-9.) Plaintiff also argues that the circumstances of this case

3

required the ALJ to request that consultative examiner Abhijay Karandikar M.D. clarify his findings. (*Id.* at 10-12.)

## 1. *The Obesity Ruling*

Defendant's self-imposed standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02–1p, *Titles II and XVI: Evaluation of Obesity,* 2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002). Consideration of obesity, however, is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7.

Plaintiff insists that a meaningful obesity discussion is not evident in the ALJ's decision. Plaintiff's argument is unsupported by the record. First, the ALJ found obesity, in combination with pulmonary and circulatory disorders and degenerative disk disease, to be a severe impairment, and as a result, he imposed limitations on Plaintiff's ability to lift and tolerate certain postural challenges. (ALJ Decision at 4, 6, PageID # 54, 56.) Additionally, when the ALJ concluded that Plaintiff's complaints of back pain and shortness of breath were overstated, in addition to pointing to Plaintiff's medical history, the ALJ also cited an expert residual functional capacity opinion that accounted for obesity (Ex. 12F).

The ALJ's discussion of the residual functional capacity (RFC) finding is consistent with the physical RFC assessment provided by Donald Trumbull M.D. (Ex. 12F), and demonstrates that the ALJ adequately considered Plaintiff's RFC. Dr. Trumbull expressly stated that Plaintiff would not have a severe physical impairment but for the existence of obesity. (PageID # 404.) According to Dr. Trumbull, while the extreme obesity results in a severe physical impairment, the impairment

4

does not foreclose the performance of light work. (*Id.* # 400, 414.) In short, the record reflects that the ALJ's discussion of obesity satisfies the requirement of Social Security Ruling 02-1p.

## 2. *Conflicting expert opinions*

"An administrative law judge has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining state agency physician." *Gilson v. Colvin*, 1:12-CV-376-GZS, 2013 WL 5674359, at *3 (D. Me. Oct. 17, 2013). *See also Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Shaw v. Sec'y of HHS*, No. 93–2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ[.] . . . While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating [or examining] doctor opinions, provided there is support for the result in the record."); 20 C.F.R. § 416.927(c) (stating, as a general rule, that examining sources deserve more weight than non-examining sources and that specialists deserve more weight in their areas of specialty).

Plaintiff maintains that the opinion of consulting examiner Dr. Karandikar, who rules out moderate to heavy labor, safety-sensitive tasks, and shift-work, and opines that Plaintiff "at most" can perform sedentary work in a part-time position, is entitled to controlling weight. (PageID # 393.) At a minimum, Plaintiff contends that because Dr. Karandikar examined Plaintiff and is an expert social security disability consultant, and because Dr. Trumbull did not expressly reject Dr. Karandikar's restriction to sedentary work (though he implicitly rejected it based on his assessment of a capacity for light exertion), the ALJ should have asked Dr. Karandikar for clarification.

5

Dr. Karandikar examined Plaintiff in July 2010. In his narrative findings, he noted Plaintiff's long history of working in construction and engaging in heavy exertion. Also noted were subjective complaints of back pain, occasional loss of sensation in the legs when lying down, angina, vascular skin disease, chronic obstructive pulmonary disease, and sleep apnea managed with a CPAP machine. (Ex. 10F, PageID # 391.) Examination findings included specific obesity measurements, muscle strength of 5/5 in all extremities, "fair ease" in mounting and stepping down from the examination table, refusal to perform heel to toe walking due to report of back pain, and range of motion measurements.

Subsequent to Dr. Karandikar's examination report, and in part based on it, Dr. Trumbull provided an expert opinion on Plaintiff's physical residual functional capacity. (Ex. 12F.) Dr. Trumbull's findings are consistent with those of the ALJ, *i.e.*, light exertion, six hour sit and six hour stand, with multiple postural limitations. (PageID # 400-401.) In his medical source statement, Dr. Trumbull noted his difference of opinion related to Dr. Karandikar's examination report, in which report, Dr. Trumbull noted, Dr. Karandikar did not explain the part-time work restriction. (PageID # 405.)

Preliminarily, a review of the expert opinions and related records suggests that both consultants could have been more thorough in their narrative discussions of the manner by which Plaintiff's impairments result in the identified restrictions. The records, however, are sufficient to support the ALJ's decision. In particular, the ALJ did not abuse his discretion when he relied on the physical RFC opinion offered by Dr. Trumbull.

The ALJ's finding of a light-work capacity is supported by substantial evidence, which evidence includes not only Dr. Trumbull's opinion, but also the ALJ's longitudinal review of the record, and his citation of multiple record entries that suggest mild symptoms. Moreover, the ALJ

6

considered Dr. Karandikar's opinion, and found the opinion to be extreme when compared to the clinical findings.

Citing 20 C.F.R. §§ 416.912(e) and 416.927(c), Plaintiff contends that the ALJ should have asked Dr. Karandikar for clarification of his opinion because Dr. Trumbull mentioned that Dr. Karandikar did not explain the rationale for a part-time work restriction. (Statement of Errors at 10-11.) Plaintiff observes that Dr. Trumbull did not explain why his opinion differed from Dr. Karandikar's opinion, and maintains that the two doctors "should have worked this out at the reconsideration level." (Statement of Errors at 10.) Contrary to Plaintiff's argument, the regulations upon which Plaintiff relies do not require consulting physicians to collaborate regarding their medical opinions, nor do the cited regulations provide that the ALJ must recontact an examining physician for clarification. The ALJ is only required to recontact *treating* providers in limited circumstances. Dr. Karandikar is not a treating physician in this case.

In addition, even if Dr. Karandikar were a treating source, the ALJ would not have been required to recontact him for clarification simply because a reviewing physician observed that he failed to explain adequately his or her findings. According to Social Security Ruling 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner*, the regulations contemplate that for "treating sources," an adjudicator will endeavor to "recontact" the source for "clarification" when the record available to the adjudicator does not permit him or her to "ascertain the basis" for the physician's opinions. 1996 WL 374183, at *2, *6; *see also Simmons v. Astrue*, No. 4:2009-cv-00540, 2012 WL 414000, at *4 (D. Ariz. Feb. 9, 2012) ("Ruling 96–5p, by its express terms, is limited to recontacting 'treating sources.'"). Despite this special consideration for treating source opinion, a reviewing medical expert can testify that the treating source's opinion is not supported by sufficient evidence in the treatment records "without triggering an obligation

7

on the part of the administrative law judge to recontact the provider for additional information." *Slobuszewski v. Soc. Sec. Admin. Comm'r*, No. 1:10-CV-00302-JAW, 2011 WL 2678954, at *9 (D. Me. June 7, 2011) (recommended decision, adopted July 26, 2011); *see also Paradise v. Astrue,* No. 1:10–cv–236–JAW, 2011 WL 1298419, *6 (D. Me. Mar. 31, 2011) (recommended decision, adopted Apr. 19, 2011) (finding that the language of 20 C.F.R. § 416.912(e) "cannot reasonably be read to require an administrative law judge to contact a medical source whenever the administrative law judge would otherwise reject that source's opinion"). Thus, even if Dr. Karandikar had been a treating source, the ALJ would not have needed to contact him for clarification.

In short, the ALJ did not find Dr. Karandikar's opinion to be persuasive based on a longitudinal record that depicts mild impairment. Dr. Trumbull's assertion that Dr. Karandikar did not explain his part-time restriction is reasonably understood as an assertion that Dr. Karandikar's findings and the longitudinal record do not support the restriction. Plaintiff has not established the longitudinal record contains objective evidence that would compel the finding that Plaintiff cannot perform substantial gainful activity at the light exertional level. In other words, while the ALJ could possibly have reached a different conclusion, the ALJ was not required to seek clarification of Dr. Karandikar's opinion, and the ALJ's decision is supported by substantial evidence on the record.

## Conclusion

Based on the foregoing analysis, the recommendation is that the Court affirm the Defendant's final decision and enter judgment in favor of Defendant.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to

28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

   April 8, 2014     /s/ John C. Nivison
               U.S. Magistrate Judge